**RECEIVED BY MAIL**

In the U.S. District Court
For the District Of Minnesota
Fourth Division

FEB 1 9 2014

Clerk, U.S. District Court
Duluth, Minnesota

| | |
|---|---|
| Eric Michael Sorenson,<br>　　　　Plaintiff, *Pro Se*<br><br>Vs.<br><br>Minnesota Department of Human Services, Minnesota Sex Offender Program, The Institute For Psychological & Sexual Health, Inc., CEO of The Institute For Psychological & Sexual Health, Inc. (Doe #1), Andrine Lemieux, Lucinda Jesson, Anne Barry, Nancy Johnston, Shelby Richardson, Cindy Breault, Jannine Hebert, Lauren Allen, Jennifer Jones, Connie Hebert, Chis Chapman-Haddock, Travis Griffith, Jim Berg, Stacey Sonnek, Tom Lundquist, Tracy Cegla, Jennifer Sebring, Tara Osborne, Angelique Ottom-Brewer, Kevin Moser, Jessica Geil, HIMS Department Staff (Doe #2), Sherri Wakefield, Connie Proctor, Kris Huso, Anita Moonen, Christine Johnson, Melissa Wickes, Program Managers (Doe #3), David Bornus,  Melissa Coble (fka. Hagen), Michelle Vietanen, and all Jane/John Does whose true names are not presently known,  are currently sued in their official, and where applicable, individual capacities<br>　　　　Defendants. | Plaintiff's Original *Pro Se* Federal Civil Rights Complaint For Declaratory, Injunctive, and Monetary Damages<br><br>**Jury Trial Demanded**<br><br>Pursuant to 42 U.S.C. § 1983<br><br>D.C. Case File No.:<br><br>14-cv- 470 ADM/LIB<br><br>Hon. Ann D. Montgomery<br><br>Mag. Leo I. Brisbois |

Plaintiff's Original *Pro Se* Federal Civil Rights Complaint For Declaratory, Injunctive, and Monetary Damages

**INTRODUCTION.**

**SCANNED**

FEB 2 0 2014

U.S. DISTRICT COURT DULUTH

1. This is a federal civil rights complaint, filed *pro se,* and authorized by 42 U.S.C. § 1983, by Eric Michael Sorenson, a civil commitment detainee, committed to the Minnesota Department of Human Services (DHS) pursuant to the Minnesota Civil Commitment and Treatment Act (MCCATA) of MSA § 253B.185[1]. This Complaint alleges that the Defendants' have maintained and refused to correct inaccurate medical records on the Plaintiff for the purposes of diagnosing him with a factitious mental disorder. The Plaintiff claims arise under the Due Process and Equal Protection Clauses of the U.S. and Minnesota Constitutions and a myriad of other state and federal common and tort law rights, and where applicable, sought to be enforced by 42 U.S.C. § 1983. The Plaintiff further raises a claim under the Title II of the Americans with Disabilities Act (Title II of the ADA) and Rehabilitation Act (RA).

## NATURE OF THE ACTION.

2. Plaintiff brings these claims *in propria persona,* on behalf of himself. Specifically, the Plaintiff alleges that the Defendants' have, in their official, and where applicable, their individual, capacities have, among other things:

   a. Failed to maintain accurate psychological records of the Plaintiff via maintaining a factitious psychological diagnosis (Antisocial Personality Disorder) on the Plaintiff's psychological/clinical records.

## JURISDICTION AND VENUE.

---

[1] Part of this statute is, upon information and belief, being recodifed under MSA § 253D by the Minnesota Legislation.

3. This Honorable Court has proper subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that this matter arises under the Constitution, laws, and/or treaties of the U.S.. Furthermore, this Honorable Court has proper supplemental jurisdiction over this matter at bar pursuant to 28 U.S.C. § 1367. Moreover, this Honorable Court has proper venue pursuant to 28 U.S.C. § 1391, in that one or more of the Defendants' live/reside/work in the State of Minnesota, and the gravamen of the issues stated herein this Complaint occurred in the State of Minnesota.

## DECLARATORY AND INJUNCTIVE RELIEF.

4. This Honorable Court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201(a), as an actual controversy exists regarding the rights, privileges, and immunities to which the Plaintiff is entitled while committed to the care and custody of the State of Minnesota. Pursuant to 28 U.S.C. § 2202, this Court has authority to grant injunctive and other necessary proper relief.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES.

5. The Plaintiff has exhausted all of his available administrative remedies prior to bringing this action and being thus far unfruitful in all attempts.

## PARTY DELEGATIONS.

**A. Plaintiff.**

6. Plaintiff, Eric Sorenson, is a civil detainee whom is civilly committed pursuant to the MCCATA as a Sexually Dangerous Person (SDP). As such, he is currently

under the custody and care of the State of Minnesota. Further, the Plaintiff is currently located at the Minnesota Sex Offender Program – Moose Lake, 1111 Highway 73, Moose Lake, Minnesota 55767. In that, the Plaintiff currently claims that the Defendants' have provided and maintained false and inaccurate records and diagnosed the Plaintiff with a mental disorder of Antisocial Personality Disorder of which the U.S. Supreme Court, in the *Foucha*[2] courts, for example, states it is not a mental disorder.

**B. Defendants.**

    **a. Artificial.**

7. Defendant, Minnesota Department of Human Services (DHS), is an agency of the State of Minnesota, whom is in charge of the care and custody of those whom have been indefinitely civilly committed to the Minnesota Sex Offender Program – Moose Lake (MSOP-ML) facility pursuant to the MCCATA. The commissioner of the DHS is currently Jesson. Upon information and belief, DHS has and continues to enacted and follow unconstitutional policies, procedures, etc…, whether express, implied, oral, written, or otherwise enacted and/or followed that has and continues to be the direct and proximate unlawful and unconstitutional acts and cause of injuries as set forth herein this complaint.

---

[2] *See e.g. Foucha v. Louisiana*, 118 LED2D 437, 504 US 71 (Decided May 18th, 1992). As explained further in the memorandum in support of this complaint (1) *Foucha*, in relevant part, is an on target case in comparison to the subject matter of this case; and (2) *Foucha* opines that Antisocial Personality Disorder is "not a mental disease" (or, synonymous, not a mental *disorder*). *See also, Shelley v. Hepp.*, 2009 U.S. Dist. LEXIS 71704 (Aug. 13th, 2009) (Cites that Antisocial Personality Disorder is not a mental disorder.)

8. Defendant, Minnesota Sex Offender Program (MSOP), is owned and operated under direction of the DHS and State Operated Services (SOS) of the State of Minnesota. It houses those whom have been indefinitely civilly committed pursuant to the MCCATA as Sexually Dangerous Persons (SDP) and/or Sexually Psychopathic Personalities (SPP). Furthermore, the State of Minnesota currently has two facilities that consist of MSOP-ML, in Moose Lake, Minnesota and MSOP – St. Peter, in St. Peter, Minnesota. The CEO of MSOP is currently Johnston. Upon information and belief, MSOP has and continues to enacted and follow unconstitutional policies, procedures, etc…, whether express, implied, oral, written, or otherwise enacted and/or followed that has and continues to be the direct and proximate unlawful and unconstitutional acts and cause of injuries as set forth herein this complaint.

9. Defendant, The Institute For Psychological & Sexual Health, Inc. (The Institute), is contracted by the DHS for the purposes of, including but not limited to, providing the initial psychological assessment on the clients, including but not limited to the Plaintiff, upon the clients/Plaintiff's entry into the MSOP facility. As explained later in this section, it is currently unknown whom the CEO (or other similarly situated head) of this company is, and as to what its legal operating status is (i.e. sole proprietor, limited liability, etc…), however, these are expected to be produced in the early stages of this litigation. Further, this report goes to the courts for the purposes of bolstering a civil commitment petition. Upon information and belief, The Institute has and continues to enact and follows unconstitutional

policies, procedures, etc…, whether express, implied, oral, written, or otherwise enacted and/or followed that has and continues to be the direct and proximate unlawful and unconstitutional acts and cause of injuries as set forth herein this complaint.

### b. Natural.

10. Defendant, Andrine Lemieux (Lemieux), is purportedly a Clinical Neuropsychologist for The Institute, which through the contract by and between MSOP and The Institute is charged with evaluating clients, including but not limited to, the Plaintiff, with mental disorders, which include, among others, Antisocial Personality Disorder upon being civilly committed. As such part of her duties is to make psychological assessments and evaluations for the courts (in the matter at bar, the Sherburne County District Court, Probate Division on the Plaintiff). Lemieux has diagnosed the Plaintiff with an inappropriate and void mental diagnosis of Antisocial Personality Disorder, which is void by decision of the U.S. Supreme Court in *Foucha*, which it should be noted, that in part, is an "on target" case for this matter as explained in the memorandum attached. Upon further information and belief, Lemieux has and continues to take unconstitutional and illegal actions with regards to the specific acts and omissions of this matter.

11. Defendant, Lucinda Jesson (Jesson), is the Commissioner of DHS. Jesson is in charge of the daily activities of the MSOP facilities in the State of Minnesota and the DHS. Jesson, upon information and belief, Jesson answers directly to the

Minnesota Governor Mark Dayton[3] (Dayton). Further, Jesson has failed to train and supervise the subordinate Defendants' relevant to this matter. Upon further information and belief, Jesson has and continues to take unconstitutional and illegal actions with regards to this matter.

12. Defendant, Anne Barry (Barry), is the Deputy/Assistant Commissioner of the DHS. Barry is in charge of assisting Jesson in her daily duties in the overseeing and operation of the MSOP. Barry's immediate supervisor is Jesson.[4] Barry has and continues to adequately train and supervise the subordinate Defendants' in this matter so as to remedy the wrongs listed herein. Upon further information and belief, Barry has and continues to take unconstitutional and illegal actions with regards to this matter.

13. Defendant, Nancy Johnston (Johnston), is the Chief Executive Officer (CEO) of the MSOP facilities in the State of Minnesota. Johnston is charged with a duty to oversee the daily operations of the MSOP facilities in the State of Minnesota. Further, Johnston has and continues to fail to adequately train and supervise the subordinate Defendants' in this matter to remedy the specific acts and omissions listed within this complaint. Upon further information and belief, Johnston has and continues to take unconstitutional and illegal actions with regards to this matter.

---

[3] Governor Mark Dayton is not currently a party to this matter, however, upon such time(s) as it is deemed necessary to add Mr. Governor Dayton to this matter as a Defendant, *if that time arises*, the Plaintiff reserves the right to file the proper motions to add Mr. Governor Dayton to this action currently at bar.
[4] All supervisors are taken from the 2013 Organizational Chart dated April 30th, 2013.

14. Defendant, Shelby Richardson (Richardson), is the Deputy Director of the MSOP. Richardson's immediate supervisor is Johnston. Richardson is endowed, in her official capacity, with the duties of assisting Johnston in her official daily duties. Richardson has and continues to fail to provide adequate training and supervision to the subordinate Defendants' to adequately remedy this matter. Upon information and belief, Richardson has and continues to implement and enforce unconstitutional and illegal policies, procedures, practices, etc… as stated by the specific acts and omissions set forth herein and relevant to the matter currently at bar.

15. Defendant, Cindy Breault (Breault), is the Executive Administrative Assistant for the MSOP. Upon information and belief, Breault's immediate supervisor is Johnston. It is currently unclear as to what Breault's official duties are; however, this is reasonably believed to be developed in the early stages of this litigation. Upon further information and belief, Breault has and continues to take unconstitutional and illegal actions with respect to the matter currently at issue.

16. Defendant, Jannine Hebert (J. Hebert), is the Executive Clinical Director for the MSOP. J. Hebert's immediate supervisor is Johnston. J. Hebert oversees the Clinical Department at the MSOP-ML facility, which includes, among others, the Assessment Unit. J. Hebert has and continues to fail to adequately provide training and supervision to the subordinate Defendants' to remedy the wrongs stated herein this complaint. Further, upon information and belief, J. Hebert has and continues to take unconstitutional and illegal actions relevant to this matter.

17. Defendant, Lauren Allen (Allen), is the Assessment Unit Director for the MSOP facility. Allen's immediate supervisor is J. Hebert. Allen directly oversees the Assessment Unit at the MSOP-ML facility. Allen is endowed with the duties to, among other things; oversee the clinical assessment reports, or other similarly situated documents, that contain diagnoses of, among others, the Plaintiff's. Allen has specifically participated in the placement of false diagnosis of the diagnosis of Antisocial Personality Disorder within the Plaintiff's medical file. Upon information and belief, Allen has and continued to take unconstitutional and illegal actions in relation to this complaint.

18. Defendant, Jennifer Jones (Jones), is an Assessment Psychologist for the MSOP facility. Jones's immediate supervisor is Allen. Jones is endowed with the duties, upon information and belief, to diagnose, among others, the Plaintiff's mental disorders. Upon information and belief, Jones has personally contributed to the specific acts and omissions listed within this complaint. Upon further information and belief, Jones has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

19. Defendant, Connie Hebert (C. Hebert), is the OASI for the MSOP. C. Hebert's immediate supervisor is Allen. It is currently unclear as to what C. Hebert's official duties are at this time; however, it is reasonably expected to be developed in the early stages of this litigation. Upon information and belief, C. Hebert has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

20. Defendant, Chris Chapman-Haddock (Chapman-Haddock), is an Intern for the MSOP. Chapman-Haddock's immediate supervisor is Allen. It is currently unclear as to what Chapman-Haddock's official duties are at this time; however, it is reasonably expected to be developed in the early stages of this litigation. Upon information and belief, Chapman-Haddock has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

21. Defendant, Travis Griffith (Griffith), is an Intern for the MSOP. Griffith's immediate supervisor is Allen. It is currently unclear as to what Griffith's official duties are at this time; however, it is reasonably expected to be developed in the early stages of this litigation. Upon information and belief, Griffith has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

22. Defendant, Jim Berg (Berg), is the Associate Clinical Director for the MSOP. Berg's immediate supervisor is, upon information and belief, Hebert.[5] It is currently unclear as to what Berg's official duties are at this time; however, it is reasonably expected to be developed in the early stages of this litigation. Upon information and belief, Berg has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

---

[5] As there is currently no Clinical Director, in accordance with the 2013 organization charts, the next immediate supervisor is Hebert.

23. Defendant, Stacy Sonnek (Sonnek), is the Clinical Program Manager for the MSOP. Sonnek's immediate supervisor is Berg. Sonnek oversees the daily interactions and duties of the Client Rights Coordinator's within the MSOP, further Sonnek's official duties also include, upon information and belief, overseeing the Clinical Department staff at the MSOP-SP facility.  Sonnek failed to adequately train and supervise the subordinate Defendants' so as to remedy the unconstitutional and illegal actions alleged by the specific acts and omissions herein. Upon further information and belief, Sonnek has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

24. Defendant, Tom Lundquist (Lundquist), is currently the Associate Clinical Director and is the current Acting MSOP – ML Clinical Director. Upon information and belief, Lundquist's immediate supervisor is Hebert.[6] It is currently unclear as to what Lundquist's official duties are at this time; however, it is reasonably expected to be developed in the early stages of this litigation. Upon information and belief, Lundquist has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

25. Defendant, Tracy Cegla (Cegla), is an OASS for the MSOP. Cegla's immediate supervisor is Lundquist. It is currently unclear as to what Cegla's official duties are at this time; however, it is reasonably expected to be developed in the early stages of this litigation. Upon information and belief, Cegla has and continues to

---

[6] See FN. 5.

take unconstitutional and illegal actions with regards to the subject matter of this complaint.

26. Defendant, Jennifer Sebring (Sebring), is an OASS for the MSOP. Sebring's immediate supervisor is Lundquist. It is currently unclear as to what Sebring's official duties are at this time; however, it is reasonably expected to be developed in the early stages of this litigation. Upon information and belief, Sebring has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

27. Defendant, Tara Osborne (Osborne), is the Unit 1-D Clinical Supervisor for the Complex building of the MSOP-ML facility. Osborne is endowed with the duties to oversee the 1-D Clinical Staff, including but not limited to Ottom-Brewer, in their daily duties. However, upon information and belief, this Osborne has failed to train and supervise, and having the authority to do so, to remedy the specific acts and omissions complained of herein this complaint. Upon further information and belief, Osborne's immediate supervisor is currently Lundquist. Upon even further information and belief, Osborne has and continues to take unconstitutional and illegal actions with relevance to the specific acts and omissions listed in this complaint.

28. Defendant, Angelique Ottom-Brewer (Ottom-Brewer), is the Plaintiff's Primary Therapist assigned to Unit 1-D of the Complex facility at the MSOP-ML facility. As such Ottom-Brewer is endowed with the duties of, as relevant to the matter at bar, (1) taking progress notes, (2) writing quarterly and annual treatment progress

reports and documents same or similar to such, and (3) assessing mental health diagnosis's, such as among others, Antisocial Personality Disorder, of clients within the MSOP-ML facility on Ottom-Brewers caseload and the Plaintiff. Ottom-Brewer's immediate supervisor is Osborne. As such Ottom-Brewer has written and otherwise produced documents that pertain to the Plaintiff's purported Antisocial Personality Disorder and filed them within the Plaintiff's relevant facility files for public viewing of the courts, and other authorized persons/entities. Upon further information and belief, Ottom-Brewer has and continues to take unconstitutional and illegal actions with regards to this matter.

29. Defendant, Kevin Moser (Moser), is the MSOP-ML Facility Director. As such Moser is endowed with the duties of the oversight of the daily operations and conduct of the MSOP-ML facility. As such, having the inherent power to do so, he failed to adequately train and supervise the subordinate Defendants' to remedy the specific acts and omissions listed herein. Upon information and belief, Moser's immediate supervisor is Johnston. Upon further information and belief, Moser has and continues to take unconstitutional and illegal actions in relevance to this matter.

30. Defendant, Jessica Geil (Geil), is the Legal Manager for the MSOP-ML facility. As such Geil is endowed with the duties of overseeing the MSOP-ML facility legal issues that are presented on a daily basis. Further, upon information and belief, Geil is also endowed with the duty to inform the other MSOP-ML Defendants' of the recent leading precedent common law stemming out of courts

such as, among others, the U.S. Supreme Court and other higher courts that directly or indirectly effect their daily working duties. Furthermore, it is upon further information and belief, Geil has and continues to fail to adequately remedy the specific facts and omissions of this complaint. Upon further information and belief, Geil has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

31. Defendant, Sherri Wakefiled (Wakefiled), is the Health Information Management Specialist for the MSOP. Wakefield's immediate supervisor is Geil. Wakefiled is endowed, in her official capacity, with the overseeing of the daily operations of the HIMS Department personnel at the MSOP facility. Wakefield has failed to train and supervise the subordinate Defendants' and is reasonably believed to be expected to have participated in the specific facts and omissions set forth herein this matter. Upon information and belief, Wakefield has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

32. Defendant, Connie Proctor (Proctor), is the Compliance and Due Process Specialist for the MSOP. Proctor's immediate supervisor is Geil. It is currently unclear as to what Proctor's official duties are at this time; however, it is reasonably expected to be developed in the early stages of this litigation. Upon information and belief, Proctor has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

33. Defendant, Kris Huso (Huso), is the Legal Assistant Admission/Departure Coordinator for the MSOP. Huso's immediate supervisor is Geil. Huso, upon information and belief, assists Giel in her daily official duties within the MSOP. Huso has failed to train and supervise the subordinate Defendants' and is reasonably believed to be expected to have participated in the specific facts and omissions set forth herein this matter. Upon information and belief, Huso has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

34. Defendant, Anita Moonen (Moonen), is the Records Manager for the MSOP. Moonen's immediate supervisor is Geil. Moonen is the "responsible authority" for the purposes of a data practices challenge under the Minn. Stat.. Further, Moonen is responsible for the information contained in the records at the MSOP, and, upon information and belief, responsible for the compliance of the Minnesota Government Data Practices Act (MGDPA) with regards to patient/the Plaintiff's files. Moonen has not only failed to train and supervise the subordinate Defendants, however, Moonen has also directly participated in the specific acts and omissions complained of herein. Upon further information and belief, Huso has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

35. Defendant, Christine Johnson (Johnson), is an Administrative Support for the MSOP. Johnson's immediate supervisor is Geil. It is currently unclear as to what Johnson's official duties are at this time; however, it is reasonably expected to be

developed in the early stages of this litigation. Upon information and belief, Johnson has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

36. Defendant, Melissa Wickes (Wikes), is the Assistant Facility Director for the MSOP-ML facility. Wickes's immediate supervisor is Moser. Wikes assists Moser in his daily official duties within the MSOP-ML facility. Wikes has failed to train and supervise the subordinate Defendants' and is reasonably believed to be expected to have participated in the specific facts and omissions set forth herein this matter. Upon information and belief, Wikes has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

37. Defendant, David Bornus (Bornus), is the Policy and Compliance Director for the MSOP. Bornus's immediate supervisor is Richardson. Bornus is a "final policy maker" for the MSOP. As such, Bornus is in charge of the policies, practices, etc... enacted and employed at the MSOP facility. Bornus has played a role in the acts and omissions listed herein by failing to implement or update new/past policies, procedures, etc... to remedy the specific acts and omissions complained of herein. Upon information and belief, Bornus has and continues to take unconstitutional and illegal actions with regards to the subject matter of this complaint.

38. Defendant, Melissa Coble (fka. Hagen) (Coble), although it is currently unknown for sure as to what Coble's official title is, it is upon information and belief, Coble is an Assessment Psychologist for the MSOP.

39. Defendant, Mischelle Vietanen (Vietanen), although it is currently unknown for sure as to what Vietanen's official title is, it is upon information and belief, Vietanen is an Assessment Psychologist for the MSOP.

### c. Jane/John Doe Defendants'.

40. Defendant, CEO of the Institute For Psychological & Sexual Health, Inc. (hereinafter known as Doe #1), is the head of The Institute. However, not much is known about this Defendant at this time, including among others: (1) the true name of this Defendant, and (2) the address of this Defendant. Further, and importantly, this information is reasonably expected to be developed to the satisfaction of current pleading standards early on in this matter. However, upon information and belief, this Defendant has failed to train and supervise, and having the authority to do so, to remedy the specific acts and omissions complained of herein this complaint. Furthermore, there is a sufficient casual connection between Doe #1's wrongful conduct and the constitutional violation.[7]

41. Defendant, HIMS Department Staff (hereinafter referred to, collectively, as Doe #2),

---

[7] Berman v. Sink, 2013 U.S. Dist. LEXIS 75443 (May 28th, 2013) (States that supervisor liability may attach in a 1983 liability claim if (1) his or her personal involvement in the constitutional depravation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.) *quoting* Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).

42. Defendant, Program Managers (hereinafter referred to, collectively, as Doe #3),

43. All other Jane/John Does whose true names are not presently known to the Plaintiff at this present time and have a role and/or acted in concert with the known Defendants in the specific acts and omissions listed herein are Defendants' in this matter as well.

### d. Legal statements about defendants'.

44. All of the above named Defendants' and those whose true names are not presently known are sued in their official, and where applicable, individual capacities.

45. At all times of the specific acts and omissions of this complaint, the Defendants' had and continue to perform their duties under the Color of State Law.

### FACTUAL ALLEGATIONS.

## A. DEFENDANTS' DELIBERATE INDIFFERENCE TO MAINTAINING INACCURATE FILES ON THE PLAINTIFF.

46. In or about 2011, the Plaintiff was civilly committed to the MSOP and diagnosed with a serious psychological disorder of, among others, Antisocial Personality Disorder by the Defendants.

47. Lemieux authored a document titled "Psychological/Psychosexual Evaluation" (Evaluation Report) dated November 9th, 2010 (listed as Date of Evaluation) and printed December 15th, 2010.

48. In the Evaluation Report, Lemieux stated that the Plaintiff was to be diagnosed with Antisocial Personality Disorder.

49. On or about July 24th, 2012, Vietanen authored a document titled "Psychological Assessment Update" (Assessment Update) which again diagnosed the Plaintiff with, among others, Antisocial Personality Disorder. Further, on or about July 26th, 2012, Allen supervised and reviewed the authoring of Assessment Update #1.

50. Then again on or about December 10th, 2013, Cobel (FKA Hegan) authored a document titled "Brief Mental Health Assessment" (Brief Assessment) that stated that the Plaintiff was again diagnosed with Antisocial Personality Disorder.

51. Further, on or about December 26th, 2013, Ottom-Brewer authored and electronically signed a document titled "Quarterly Treatment Progress Report" (Progress Report). Subsequently the Progress Report was reviewed and approved by Osborne and electronically signed by Osborne on January 3rd, 2014.

52. Furthermore, on every document that the Plaintiff has received within the MSOP titled "Quarterly Treatment Progress Report" and "Annual Treatment Report" or same or similarly named document, the Defendants' have diagnosed the Plaintiff with Antisocial Personality Disorder.

53. The Evaluation Report, Assessment Update, Brief Assessment, Progress Report, and all preceding and subsequent documents same or similarly named as those listed herein this complaint have been filed by the Defendants' into the Plaintiff's facility, court, and county files.

54. The information contained within the Evaluation Report, Assessment Update, Brief Assessment, Progress Report, and all preceding and subsequent documents same or similarly named as those listed herein this complaint is false, as the

Supreme Court has stated that Antisocial Personality Disorder is not a mental illness/disease. Thus, since Antisocial Personality Disorder is not diagnosable as a disorder/disease then it would be false information to place into the Plaintiff's facility, county, court files.

55. Upon being civilly committed in approximately 2011, the diagnosis of Antisocial Personality Disorder was a serious heavy factor in the civil commitment of the Plaintiff. Further it continues to be a heavy factor in the civil commitment of the Plaintiff, as it is a mental disorder upon which the Defendants' are keeping the Plaintiff civilly committed on. Further, the diagnosis will stymie the Plaintiff's release back into society as the diagnosis of Antisocial Personality Disorder, being on the Plaintiff's record, will surely play a heavy role into the release of the Plaintiff.

56. Civil Commitment causes a serious loss to the Plaintiff's liberty rights protected under the U.S. Constitution.

57. On or about November and December, 2013, respectively, the Plaintiff informed Vietanen and Cobel that the Supreme Court in *Foucha,* stated, in relevant part, that Antisocial Personality Disorder was not an actual mental disorder and then the Plaintiff requested both Vietanen and Cobel to expunge any mention of the disorder from the herein-named documents including any future documents.

58. On or about November and December, 2013, Vietanen and Cobel, on the respective dates, denied the Plaintiff to expunge such information.

59. Upon information and belief, the actions of the Defendants' upon maintaining the inaccurate records/documents mentioned herein was willful and intentional.

60. The Defendants' have treated the Plaintiff, being a U.S. citizen, white, male, from those same or similarly situated with unlawful and purposeful discrimination via providing that the Defendants' will not remove the diagnosis of Antisocial Personality Disorder from the Plaintiff's files, however, upon information and belief, the Defendants' have removed the same diagnosis from other same or similarly situated persons as the Plaintiff upon request.

### CAUSES OF ACTION.

### COUNT I.

### INACCURATE INFORMATION IN PLAINTIFF'S FILE. (SUBSTANTIVE DUE PROCESS VIOLATION).

61. The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

62. The Plaintiff, being a civil commitment detainee, has a right to challenge, via the Due Process Clause of the U.S. and Minnesota Constitutions, any inaccurate information maintained within his facility, county, court files.[8]

63. As stated by the specific acts and omissions set forth in this complaint the Defendants' have maintained inaccurate and false documents in the Plaintiff's facility, county, court files.

---

[8] *See e.g. Labounty v. Coombe,* 2000 U.S. App. LEXIS 4312 (March 16th, 2000).

64. Specifically, the false information maintained by the Defendants' consists of Antisocial Personality Disorder, contained within, including but not limited to Evaluation Report, Assessment Update, Brief Assessment, Progress Report, and any preceding and subsequent documents same or similarly titled.

65. The U.S. Supreme Court has opined that Antisocial Personality Disorder is *not* a mental disorder/disease.[9] Thus, to maintain the diagnosis of Antisocial Personality Disorder within the Plaintiff's facility, county, and/or court records makes the record false and ripe to be expunged.

66. The Plaintiff will be and has been seriously injured based upon the direct and proximate cause of the Defendants' actions in this matter.

67. Thus, the failure of Lemieux, Vietanen, Allen, Cobel, Ottom-Brewer, and Osborne to remedy the inaccurate files/diagnosis of Antisocial Personality Disorder maintained within the Plaintiff's facility, county, court records, as stated by the specific acts and omissions listed within this complaint, violates the Plaintiff's well-established rights pursuant to the Due Process Clause of Section 1 of the Fourteenth Amendment of the U.S. Constitution and Sec. 1 of the Minnesota Constitution.

68. Doe #1, Jesson, Barry, Johnston, Richardson, Breault, J. Hebert, Jones, C. Hebert, Chapman-Haddock, Griffith, Berg, Sonnek, Lundquist, Cegla, Sebring, Moser, Geil, Doe #2, Doe #3, Wakefield, Proctor, Huso, Moonen, Johnson, and Wickes

---

[9] *See e.g. Foucha v. Louisiana,* 118 LED2D 437, 504 US 71 (Decided May 18th, 1992).

all failed to provide adequate training and supervision so as to adequately remedy the specific acts and omissions listed within this complaint.

69. Bornus, having the authority to do so, failed to enact a policy, procedure, etc... to further remedy the specific acts and omissions complained of in this complaint.

70. DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

71. The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT II.

## DEFENDANTS' DELIBERATE INDIFFERENCE TO THE INACCURATE MEDICAL RECORDS OF THE PLAINTIFF. (DUE PROCESS VIOLATION).

72. The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

73. A serious medical need is one that has been diagnosed by a qualified professional or one that was so obvious that even a lay person would easily recognize the necessity of a doctor's attention.[10]

---

[10] *Blaisdell v. Tanner,* 2001 U.S. Dist. LEXIS 23769 (June 14th, 2001) (A serious medical need is one that has been diagnosed by a doctor as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention.)

74. Lemieux, Vietanen, Allen, Cobel, Ottom-Brewer, and Osborne have diagnosed the Plaintiff with Antisocial Personality Disorder.

75. The U.S. Supreme Court has stated that Antisocial Personality Disorder is not a mental illness.[11]

76. Further, Lemieux, Vietanen, Allen, Cobel, Ottom-Brewer, and Osborne, have been informed of the respective Supreme Court decision as such based upon the fact the Plaintiff has written the Plaintiff numerous times and explained it to them, and, in fact, has provided an exact excerpt from the Supreme Court case law explaining that Antisocial Personality Disorder is not classified as a mental disorder.

77. Thus, Lemieux, Vietanen, Allen, Cobel, Ottom-Brewer, and Osborne, in diagnosing the Plaintiff with Antisocial Personality Disorder, as described by the specific acts and omissions listed herein this Complaint, have violated the Plaintiff's well-established rights pursuant to the Due Process Clause of Section 1 of the Fourteenth Amendment of the U.S. Constitution and Art. 1 of the Minnesota Constitution.

78. Doe #1, Jesson, Barry, Johnston, Richardson, Breault, J. Hebert, Jones, C. Hebert, Chapman-Haddock, Griffith, Berg, Sonnek, Lundquist, Cegla, Sebring, Moser, Geil, Doe #2, Doe #3, Wakefield, Proctor, Huso, Moonen, Johnson, and Wickes all failed to provide adequate training and supervision so as to adequately remedy the specific acts and omissions listed within this complaint.

---

[11] See FN. 9.

79. Bornus, having the authority to do so, failed to enact a policy, procedure, etc… to further remedy the specific acts and omissions complained of in this complaint.

80. DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

81. The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

### COUNT III.

### VIOLATION OF EQUAL PROTECTION. (CLASS OF ONE).

82. The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

83. The Plaintiff, in pleading a class of one need claim, need not plead that he is a member of a protected class per se.[12]

84. The Equal Protection clause extends itself to protections over arbitrary or irrational state action.

85. Further, the Plaintiff need not prove, in an Equal Protection claim that another fundamental right was trampled, the right to equal protection of the laws is itself

---

[12] *See e.g.* Tavares v. Amato, 2013 U.S. Dist. LEXIS 85436 (May 14th, 2013), *citing* Fortunatus v. Clinton County, N.Y., No. 12-CV-458 (RFT), 2013 U.S. Dist. LEXIS 48613, 2013 WL 1386641, at *11 (N.D.N.Y. Apr. 4th, 2013) (Citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)) (Inferring that "Suspect Class" need not be plead for class of one claim.")

fundamental. Nor need a plaintiff prove in an Equal Protection claim that he or she was victimized by a "suspect class" such as race.

86. The key requirement in an Equal Protection claim is that the Plaintiff allege and prove unlawful, purposeful discrimination on the part of state officers, of which, as demonstrated by the specific facts and omissions listed within this complaint, the Plaintiff has satiated.

87. Thus, based upon the Defendants' disparate treatment of the Plaintiff from those that are and where same or similarly situated as the Plaintiff, as described by the specific acts and omissions listed herein this complaint, violates the Plaintiff's well established rights to a Class of One claim of the Equal Protection Clause of Section 1 of the Fourteenth Amendment of the U.S. Constitution and Art. 1 of the Minn. Const.

88. Doe #1, Jesson, Barry, Johnston, Richardson, Breault, J. Hebert, Jones, C. Hebert, Chapman-Haddock, Griffith, Berg, Sonnek, Lundquist, Cegla, Sebring, Moser, Geil, Doe #2, Doe #3, Wakefield, Proctor, Huso, Moonen, Johnson, and Wickes all failed to provide adequate training and supervision so as to adequately remedy the specific acts and omissions listed within this complaint.

89. Bornus, having the authority to do so, failed to enact a policy, procedure, etc... to further remedy the specific acts and omissions complained of in this complaint.

90. DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

91. The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT IV.

### VIOLATION OF EQUAL PROTECTION.

92. The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

93. The Equal Protection clause extends itself to protections over arbitrary or irrational state action.

94. Further, the Plaintiff need not prove, in an Equal Protection claim that another fundamental right was trampled, the right to equal protection of the laws is itself fundamental. Nor need a plaintiff prove in an Equal Protection claim that he or she was victimized by a "suspect class" such as race.

95. The key requirement in an Equal Protection claim is that the Plaintiff allege and prove unlawful, purposeful discrimination on the part of state officers, of which, as demonstrated by the specific facts and omissions listed within this complaint, the Plaintiff has satiated.

96. Thus, based upon the Defendants' disparate treatment of the Plaintiff from those that are and where same or similarly situated as the Plaintiff, as described by the specific acts and omissions listed herein this complaint, violates the Plaintiff's well established rights to the Equal Protection Clause of Section 1 of the Fourteenth Amendment of the U.S. Constitution and Art. 1 of the Minn. Const.

97. Doe #1, Jesson, Barry, Johnston, Richardson, Breault, J. Hebert, Jones, C. Hebert, Chapman-Haddock, Griffith, Berg, Sonnek, Lundquist, Cegla, Sebring, Moser, Geil, Doe #2, Doe #3, Wakefield, Proctor, Huso, Moonen, Johnson, and Wickes all failed to provide adequate training and supervision so as to adequately remedy the specific acts and omissions listed within this complaint.

98. Bornus, having the authority to do so, failed to enact a policy, procedure, etc… to further remedy the specific acts and omissions complained of in this complaint.

99. DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

100.    The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT V.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

101.    The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

102.    The conduct of the Defendants', as stated herein this complaint by the specific acts and omissions, are extreme and outrageous, especially in consideration that a false diagnosis of Antisocial Personality Disorder will provide for an great barrier to release of the Plaintiff in the future and since the diagnosis

was given great weight by the Plaintiff's committing court upon the Plaintiff's indefinite civil commitment.

103.     Further then, the conduct of the Defendants' as explained herein by the specific acts and omissions listed herein this complaint will have been and continue to be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.

104.     The conduct of the Defendants, as stated herein by the Plaintiff was and is intentional and reckless, as the Plaintiff informed the Defendants' that Antisocial Personality Disorder was no longer a mental disorder, however the Defendants' refused to remedy the error.

105.     The Defendants' conduct, as stated herein by the specific acts and omissions listed herein caused the Plaintiff severe emotional distress, which no reasonable man could be expected to endure, as the Plaintiff was stymied from his liberties based upon the conduct of the Defendants.

106.     Based upon the outrageous conduct of the Defendants, which caused the Plaintiff extreme and server emotional distress, which no man could reasonably be expected to endure, as stated by the specific acts and omissions of this complaint, the Defendants' have violated the Plaintiff's well-established right to intentional infliction of emotional distress.

107.     Since this is a tort claim, the doctrine of respondeat superior attaches to this claim, which makes all Supervisory Defendants' liable for the wrongs of

Subordinate Defendants, individual supervisory claims need not be alleged for this count.

108.     Bornus, having the authority to do so, failed to enact a policy, procedure, etc... to further remedy the specific acts and omissions complained of in this complaint.

109.     DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

110.     The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT VI.

### NEGLIGENT INFLICTION OF EMOTIONAL HARM.

111.     The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

112.     The Plaintiff re-pleads and incorporates paragraphs 62-65 of this complaint here.

113.     The Defendants' have a duty to provide accurate and complete records on the Plaintiff. Surely diagnosing the Plaintiff with Antisocial Personality Disorder, after the U.S. Supreme Court stated that it was not a disorder, was a breach of that duty.

114.    The Defendants' should have realized that their conduct, as stated by the specific acts and omissions listed herein this complaint, involved an unreasonable risk of causing emotional distress of which was medically diagnosable and of sufficient severity so as to be medically significant, as the Plaintiff was placed on medications, proscribed by a licensed physician, to calm his stress level down.

115.    Based upon the fact that the Defendants' should have realized that their conduct was causing the Plaintiff severe emotional distress that was diagnosed by a physician, as stated by the specific acts and omissions listed herein this complaint, violates the Plaintiff's well-established rights pursuant to the tort of Negligent Infliction of Emotional Harm.

116.    Since this is a tort claim, the doctrine of respondeat superior attaches to this claim, which makes all Supervisory Defendants' liable for the wrongs of Subordinate Defendants, individual supervisory claims need not be alleged for this count.

117.    Bornus, having the authority to do so, failed to enact a policy, procedure, etc… to further remedy the specific acts and omissions complained of in this complaint.

118.    DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

119.     The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT VII.

### NEGLIGENCE.

120.     The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

121.     The Defendants' have a duty to maintain accurate records on the Plaintiff and diagnose the Plaintiff accurately with mental or other disorders.

122.     The Defendants' actions, as specifically stated by the specific acts and omissions within this complaint, such as, among others, failing to expunge the diagnosis of Antisocial Personality Disorder from the Plaintiff's facility, county, court file after being made deliberately indifferent to the U.S. Supreme Court decision in *Foucha* that stated that Antisocial Personality Disorder was not a mental disorder, caused a breach of their duties to maintain accurate records on the Plaintiff and to diagnose the Plaintiff accurately.

123.     The Defendants' breach of their duties via failure to maintain accurate records on the Plaintiff and failing to accurately diagnose the Plaintiff caused the Plaintiff to suffer damages.

124.     Furthermore, the Defendants' based upon the Defendants' breach of their duties owed to the Plaintiff, as specifically described by the specific acts and

omissions herein this Complaint, violated the Plaintiff's well-established rights pursuant to the tort of Negligence.

125.     Since this is a tort claim, the doctrine of respondeat superior attaches to this claim, which makes all Supervisory Defendants' liable for the wrongs of Subordinate Defendants, individual supervisory claims need not be alleged for this count.

126.     Bornus, having the authority to do so, failed to enact a policy, procedure, etc... to further remedy the specific acts and omissions complained of in this complaint.

127.     DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

128.     The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT VIII.

### MINNESOTA HEALTH RECORDS ACT.

129.     The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

130.     The Minnesota Health Records Act provides an assumption that the Defendants', being state actors, will maintain accurate records/documents on the Plaintiff.

131.    Therefore, when a breach of this duty under the Minnesota Health Records Act has been made, it would be actionable under the Minnesota Health Records Act.

132.    In that, the Minnesota Health Records Act defines health records as any information, whether oral or recorded in any form or medium, that relates to the past, present, or future physical or mental health or condition of a patient; the provision of health care to a patient; or the past, present, or future payment for provision of health care to a patient. Thus, the Plaintiff's health records at issue are written in a medium, such as documentary form, that is pertaining and relating to the past, present, and future mental health of the patient, as the documents in question are clearly documents used to diagnose the Plaintiff with mental health disorders.

133.    As defined in the Minnesota Health Records Act Patient means a natural person who has received care services from a provider for treatment or examination of a … mental condition…. As such the Plaintiff is currently detained within the MSOP-ML facility for purposes for treatment and/or examination of a mental health condition.

134.    Thus, the failure of the Defendant to supply accurate health records of the Plaintiff and the Defendants' inability to provide an accurate diagnosis of the Plaintiff, as described by the specific acts and omissions listed herein, violated the Plaintiff's well-established rights under the Minnesota Health Records Act.

135.     Since this is a tort claim, the doctrine of respondeat superior attaches to this claim, which makes all Supervisory Defendants' liable for the wrongs of Subordinate Defendants, individual supervisory claims need not be alleged for this count.

136.     Bornus, having the authority to do so, failed to enact a policy, procedure, etc… to further remedy the specific acts and omissions complained of in this complaint.

137.     DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

138.     The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT IX.

### MINNESOTA GOVERNMENT DATA PRACTICES ACT.

139.     The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

140.     The Minnesota Government Data Practices Act provides an assumption that the Defendants', being state actors, will maintain accurate records/documents on the Plaintiff.

141.    Therefore, when a breach of this duty under the Minnesota Government Data Practices Act has been made, it would be actionable under the Minnesota Government Data Practices Act.

142.    In that, the Minnesota Government Data Practices Act defines health records as any information, whether oral or recorded in any form or medium, that relates to the past, present, or future physical or mental health or condition of a patient; the provision of health care to a patient; or the past, present, or future payment for provision of health care to a patient. Thus, the Plaintiff's health records at issue are written in a medium, such as documentary form, that is pertaining and relating to the past, present, and future mental health of the patient, as the documents in question are clearly documents used to diagnose the Plaintiff with mental health disorders.

143.    As defined in the Minnesota Government Data Practices Act Patient means a natural person who has received care services from a provider for treatment or examination of a … mental condition…. As such the Plaintiff is currently detained within the MSOP-ML facility for purposes for treatment and/or examination of a mental health condition.

144.    Thus, the failure of the Defendant to supply accurate health records of the Plaintiff and the Defendants' inability to provide an accurate diagnosis of the Plaintiff, as described by the specific acts and omissions listed herein, violated the Plaintiff's well-established rights under the Minnesota Government Data Practices Act.

145.     Since this is a tort claim, the doctrine of respondeat superior attaches to this claim, which makes all Supervisory Defendants' liable for the wrongs of Subordinate Defendants, individual supervisory claims need not be alleged for this count.

146.     Bornus, having the authority to do so, failed to enact a policy, procedure, etc… to further remedy the specific acts and omissions complained of in this complaint.

147.     DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

148.     The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT X.

### MINNESOTA HUMAN RIGHTS ACT.

149.     The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

150.     The Minnesota Human Rights Act provides an assumption that the Defendants', being state actors, will maintain accurate records/documents on the Plaintiff.

151.    Therefore, when a breach of this duty under the Minnesota Human Rights Act has been made, it would be actionable under the Minnesota Human Rights Act.

152.    In that, the Minnesota Human Rights Act defines health records as any information, whether oral or recorded in any form or medium, that relates to the past, present, or future physical or mental health or condition of a patient; the provision of health care to a patient; or the past, present, or future payment for provision of health care to a patient. Thus, the Plaintiff's health records at issue are written in a medium, such as documentary form, that is pertaining and relating to the past, present, and future mental health of the patient, as the documents in question are clearly documents used to diagnose the Plaintiff with mental health disorders.

153.    As defined in the Minnesota Human Rights Act Patient means a natural person who has received care services from a provider for treatment or examination of a … mental condition…. As such the Plaintiff is currently detained within the MSOP-ML facility for purposes for treatment and/or examination of a mental health condition.

154.    Thus, the failure of the Defendant to supply accurate health records of the Plaintiff and the Defendants' inability to provide an accurate diagnosis of the Plaintiff, as described by the specific acts and omissions listed herein, violated the Plaintiff's well-established rights under the Minnesota Human Rights Act.

155.     Since this is a tort claim, the doctrine of respondeat superior attaches to this claim, which makes all Supervisory Defendants' liable for the wrongs of Subordinate Defendants, individual supervisory claims need not be alleged for this count.

156.     Bornus, having the authority to do so, failed to enact a policy, procedure, etc… to further remedy the specific acts and omissions complained of in this complaint.

157.     DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

158.     The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

## COUNT XI.

### PRIVACY ACT.

159.     The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

160.     The DHS, MSOP are all governmental agencies, and The Institute is a governmental agency via contractual agreement.

161.     The DHS, MSOP, and The Institute, as described within the specific acts and omissions listed within this complaint, failed to maintain accurate records on the Plaintiff.

162.     Based upon the adverse actions of DHS, MSOP, and The Institute failing to maintain adequate records, the Plaintiff sustained substantial damages via mentally, physically, emotionally, and psychologically to his person. Specifically, the Plaintiff lost his freedom based the actions of DHS, MSOP, and The Institute, as specifically stated herein this complaint.

163.     Upon information and belief, the actions of DHS, MSOP, and The Institute, as set forth herein by the specific acts and omissions of this complaint, where willful and intentional.

164.     Thus, based upon DHS, MSOP, and The Institute's failure to maintain accurate records on the Plaintiff, as set forth by the specific acts and omissions listed herein this complaint, violates the Plaintiff's well-established right pursuant to the Privacy Act.

165.     Since this is a tort claim, the doctrine of respondeat superior attaches to this claim, which makes all Supervisory Defendants' liable for the wrongs of Subordinate Defendants, individual supervisory claims need not be alleged for this count.

166.     The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of DHS, MSOP, and The Institute, unless relief is granted in this matter.

## COUNT XII.

## TITLE II OF THE AMERICANS WITH DISABILITIES ACT (TITLE II ADA) AND

## REHABILITATION ACT (RA).

167.     The Plaintiff re-pleads and incorporates the previous paragraphs set forth in this complaint.

168.     The elements of a Title II ADA claim are the exact same as a claim under the RA, thus both have been alleged here.

169.     The Plaintiff is a qualified individual with a disability, as he is currently detained with multiple mental illnesses within a secured treatment facility, being the MSOP-ML facility and based upon disabilities that the Plaintiff has such as dramatimyositis[13] and Borderline Personality Disorder and also the Plaintiff is economically disabled as well.

170.     In that, the Defendants' have denied the Plaintiff his rights to proper accurate medical files, as they have laden the Plaintiff's files with the diagnosis of Antisocial Personality Disorder.

171.     The Defendants' actions and inactions, as specifically stated herein by the specific acts and omissions listed herein, have violated the Plaintiff's well established rights pursuant to the Title II of the ADA and the RA acts.

172.     Since this is a tort claim, the doctrine of respondeat superior attaches to this claim, which makes all Supervisory Defendants' liable for the wrongs of Subordinate Defendants, individual supervisory claims need not be alleged for this count.

---

[13] *(dra-mat-o-my-o-cite-is)* - A degenerative muscle and tissue disorder.

173.     Bornus, having the authority to do so, failed to enact a policy, procedure, etc… to further remedy the specific acts and omissions complained of in this complaint.

174.     DHS, MSOP, and The Institute, had and continues to adopt and implement policies, practices, procedures, whether explicit and/or implied, are the direct and proximate cause of the Plaintiff's injuries complained of herein.

175.     The Plaintiff will continue to be damaged by the direct and proximate unconstitutional and unlawful actions of the Plaintiff unless relief is granted in this matter.

### PRAYER FOR RELIEF.

WHEREFORE, the Plaintiff hereby respectfully prays this Honorable Court grant the following reliefs to the Plaintiff:

A. Declare the actions of the Defendants' as set forth by the specific acts and omissions herein to be in violation of the Plaintiff's constitutional, and common law and statutory rights;

B. Issue injunctive relief enjoining the Defendants', their agents, successors, or any other persons acting in concert with them from engaging in the same or similar conduct as alleged by the specific acts and omissions plead in this complaint;

C. Issue injunctive ordering the Defendants', their agents, successors, or any other persons acting in concert with them to remove the diagnosis of "Antisocial Personality Disorder" or any similarly named diagnosis from the Plaintiff's

institution files, including but not limited to any clinical records, medical records, etc...;

D. Issue nominal damages for each violation of the Plaintiff's statutory, common law, and constitutional violation this Court finds in favor of the Plaintiff for either jointly or severally against the Defendants' and award to the Plaintiff;

E. Issue declaratory damages for each violation of the Plaintiff's statutory, common law, and constitutional violation this Court finds in favor of the Plaintiff for either jointly or severally against the Defendants' and award to the Plaintiff;

F. Issue compensatory damages for each violation of the Plaintiff's statutory, common law, and constitutional violation this Court finds in favor of the Plaintiff for either jointly or severally against the Defendants' and award to the Plaintiff;

G. Issue punitive damages for each violation of the Plaintiff's statutory, common law, and constitutional violation this Court finds in favor of the Plaintiff for either jointly or severally against the Defendants' and award to the Plaintiff;

H. Issue pre and post-trial interest to the Plaintiff and against the Defendants as allowed by law and equity;

I. Award court costs and attorney's fees to the Plaintiff and against the Defendants as allowed by law and equity;

J. Issue any other relief allowed by law and equity.

Date: Friday, January 10, 2014

Respectfully Submitted:

Eric Michael Sorenson
1111 Highway 73
Moose Lake, Minnesota 55767

## JURY DEMANDED.

Pursuant to the Federal Rules of Civil Procedure 38(b), the Plaintiff hereby demands a trial by jury on all issues so triable.

## COMPLAINT VERIFICATION.

The Plaintiff, Eric Michael Sorenson, hereby states and certifies under the penalties of perjury, that the aforementioned paragraphs, as stated herewithin, are true and correct to the best of my abilities, with the exception of those made under information and belief, and as to those the Plaintiff believes them to be true and correct upon information and belief.

Date: Friday, January 10, 2014

Respectfully Submitted:

Eric Michael Sorenson
1111 Highway 73
Moose Lake, Minnesota 55767